UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MAYUR LLC, d/b/a PARIVA, LLC, | ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | No. 1:25-cv-11160-JEK |
| FREEDOM FOODS, LLC, | ) ) ) |  |
| Defendant. | ) ) |  |

**MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION TO DISMISS**

**KOBICK, J.**

This is a breach of contract action involving spreadable yogurt snacks. Plaintiff Mayur, LLC, doing business as Pariva, LLC, is a Massachusetts-based business that produces yogurt snacks called Pariva Bites. Defendant Freedom Foods, LLC is a Vermont-based contract manufacturer for specialty food brands. After Pariva and Freedom Foods allegedly entered into contracts governing the production of Pariva Bites and equipment used in that production, Pariva found mold in the Pariva Bites produced by Freedom Foods. Pariva then sued Freedom Foods for breach of contract, breach of implied warranties, quantum meruit, and a violation of M.G.L. c. 93A. Pending before the Court is Freedom Foods' motion to dismiss for lack of personal jurisdiction or improper venue, or, in the alternative, to transfer this action to the United States District Court for the District of Vermont. Pariva opposes those motions and has moved, in the alternative, for limited discovery as to personal jurisdiction. Because Pariva has not established that the Court has personal jurisdiction over Freedom Foods, the case will be dismissed without prejudice to refiling in a Court of competent jurisdiction. And, because the additional discovery

Pariva proposes does not pertain to the fundamental jurisdictional defect, its request for jurisdictional discovery will be denied.

## BACKGROUND

The following facts are recounted as alleged in the complaint, supplemented with the jurisdictional evidence submitted in connection with the motion to dismiss. *See Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016). The Court will give "credence to the plaintiff's version of genuinely contested facts," *id.*, and will consider the defendant's proffered facts "only to the extent that they are uncontradicted," *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007).

Pariva is a limited liability company whose sole member and owner, Manjari Saha, is a resident of Massachusetts. ECF 12-1, ¶¶ 1, 3; ECF 19. Pariva sells Pariva Marinated Yogurt Bites ("Pariva Bites"), a spreadable yogurt snack that comes in a variety of flavors. ECF 12-1, ¶ 5. Freedom Foods is a limited liability company whose sole member and manager, Cathy Bacon, is a resident of Vermont. ECF 9-1, ¶¶ 1-2; ECF 20. Freedom Foods is a contract manufacturer for brands of specialty food and beverage products seeking to scale their production. ECF 9-1, ¶ 3; ECF 12-1, ¶ 8. Though located in Vermont, Freedom Foods has previously worked with out-of-state companies, including at least two based in Massachusetts. ECF 12-1, ¶ 8. Freedom Foods holds a Safe, Quality, Food ("SQF") certification, which means that its facilities "follo[w] the highest food and safety practices." ECF 1-1, ¶ 9; *see* ECF 9-1, ¶ 3.

Since 2020, Pariva has sold Pariva Bites at New England-area Whole Foods Market locations, specialty stores, and local farmer's markets. ECF 12-1, ¶ 5. Interested in expanding its sales, Pariva sought recommendations in 2020 for a manufacturer that could "co-pack" its products. *Id.* ¶ 6. "Co-packing," in this context, refers to the arrangement whereby small businesses

pay Freedom Foods to manufacture their products at its Vermont facility. Hillside Harvest, a Massachusetts business that had previously worked with Freedom Foods, recommended Freedom Foods to Pariva. *Id.* Pariva reached out to Freedom Foods but, after initial conversations, decided not to move forward with the co-packing relationship due to the costs involved. *Id.*

In September 2022, Pariva reached out to Freedom Foods again about scaling up its production of Pariva Bites. *Id.* ¶ 10; ECF 12-3, at 2. That time, the discussions between Pariva and Freedom Foods progressed further. On the understanding that Freedom Foods possessed a machine capable of producing Pariva Bites, Saha signed a variety of onboarding documents. ECF 12-1, ¶¶ 10-11. These documents were titled "Purpose of a Test Day(s)," "Client Ingredient Sourcing / Vendor Compliance Checklist," "Freedom Foods Test Day," "Client Rates/Schedule of Fees," and "Mutual Non-Disclosure Agreement." *Id.* ¶ 10 (Saha averring that she "signed onboarding documents"); ECF 9-1, ¶ 7; ECF 9-2, 9-3, 9-4, 9-5, 9-6. Though the forms were dated, they did not specify the duration of the parties' agreements. *See id.* The non-disclosure agreement contained a Vermont choice-of-law provision and a Vermont forum selection clause. ECF 9-6, § 12(b).

The parties' plan was to start with a "test day" at Freedom Foods to see if its machinery could produce Pariva Bites. ECF 12-1, ¶ 11; ECF 12-3, at 2. But, after a failed trial run on an identical machine at a Massachusetts supplier, Pariva opted to cancel the test day at Freedom Foods. ECF 12-1, ¶¶ 11, 12. It was Saha's understanding that, upon cancellation of the test day, the previously signed onboarding documents were no longer in effect. *Id.* ¶ 12.

In January 2024, Whole Foods Market notified Pariva that it wished to expand its sales of Pariva Bites beyond New England, and Costco expressed interest in selling Pariva Bites. *Id.* ¶ 13. Because both retailers would require that Pariva scale up its production and that Pariva Bites be SQF-certified, Pariva reached back out to Freedom Foods in March 2024 to explore production.

3

*Id.* ¶¶ 13-14; ECF 12-3, at 3-5. Freedom Foods and Pariva exchanged several emails about Freedom Foods' SQF certification and ingredients for Pariva Bites. ECF 12-3, at 3-5. In the emails, Pariva clarified that "part of the run will go to [Whole Foods]." *Id.* at 3. Freedom Foods did not, however, have an appropriate machine to produce Pariva Bites. ECF 12-1, ¶ 15. Knowing this, Pariva suggested that it equip Freedom Foods with the proper machinery by (1) lending its sole machine to Freedom Foods and (2) purchasing a larger, faster machine and lending it, too, to Freedom Foods. *Id.* In making this suggestion, Pariva "made it clear" to Freedom Foods that, in lending its sole equipment to Freedom Foods, Pariva would not be able to fulfill a standing purchase order. *Id.* In Pariva's view, both parties therefore understood that the "run that would be conducted by Freedom Foods would be a two-day production—not a traditional test day." *Id.*

Throughout March 2024, the parties exchanged emails about drafting a contract for the equipment arrangement and about the first steps for producing Pariva Bites. *See* ECF 12-3, at 7-11; ECF 12-4. Responding to a question from Freedom Foods about ingredients and equipment delivery timing, Pariva said: "Based on [Freedom Foods'] agreement, there are severe penalties for not keeping a date, so I am reticent to [set one] without [an equipment contract] in place. I do need to get a production run done soon, so trying to move this along as much as possible." ECF 12-4, at 2. In reply, Freedom Foods explained that "[t]he agreement is a shell" and clarified that Pariva was "not . . . committing to a [co-packing] contract – i.e. a set number of days of production per month." *Id.* Rather, Freedom Foods said, Pariva was going to start "on call," meaning Pariva would pay "the same daily rate charges as a core contract" but "retain the flexibi[l]ity of scheduling days based on production needs." *Id*. Freedom Foods also indicated that there would be production expectations when Pariva "advance[d] to a co-packing contract," but those expectations had not been determined because the parties had not yet "run any test/production." *Id.* On April 4, 2024,

4

the parties executed an "Equipment Placement Agreement" governing Pariva's lease of its equipment to Freedom Foods. ECF 12-1, ¶ 19; ECF 9-1, ¶ 3; ECF 9-7.[1] The equipment agreement contained a Vermont choice-of-law provision. ECF 9-7, § 13.

On April 22 and April 23, 2024, Pariva and Freedom Foods produced Pariva Bites at Freedom Foods' facility in Vermont using Pariva's equipment. ECF 12-1, ¶ 21. In advance of that production, Pariva purchased "ingredients in an amount that was appropriate for a production run," in excess of what was ordered for the test day planned for 2022. *Id.* ¶ 20. Saha attended the production and, while there, "noted unsanitary work areas, machinery that was not properly cleaned, [and] oils from the previous day not properly stored." *Id.* ¶ 21. After production, Pariva and Freedom Foods collaborated to ship the Pariva Bites to Pariva's distributor, Seacrest Foods International, Inc., in Lynn, Massachusetts. *See* 12-6, at 2-3, 33 (Freedom Foods reaching out directly to a shipping company to "arrange shipment of one pallet of refrigerated food to be picked up at Freedom Foods in Randolph[,] VT, going to Seacrest in Lynn, MA").

In early May 2024, Pariva and Freedom Foods began communicating about a second production of Pariva Bites. Pariva made clear to Freedom Foods that it had "production needs for May" and thus wished to initiate a second production promptly. ECF 12-7, at 2. In response, Freedom Foods quoted the cost of a "two day production run" and recommended adjustments for the next production to improve efficiency. *Id.* Throughout the rest of the month and early June, the parties engaged in consistent communications over challenges with delivery dates, "best-by" dates,

---

[1] The Equipment Placement Agreement submitted to the Court is missing a signature from Freedom Foods. ECF 9-7, at 4. Nonetheless, because Freedom Foods, in the affidavit of its owner Cathy Bacon, admits that "Freedom Foods and Pariva . . . reached at least three separate agreements" and refers to "[t]he third agreement" as the "Equipment Placement Agreement," the Court assumes, without deciding, that such an agreement was properly executed between the parties. ECF 9-1, ¶¶ 5, 9.

5

payments, and "food safety concerns." ECF 12-1, ¶¶ 23-24; ECF 12-7, at 4-35. On May 30, June 5, or June 6, 2024, Freedom Foods ran a second production of Pariva Bites. ECF 12-1, ¶ 24. From June 5 until June 13, Pariva and Freedom Foods exchanged emails arranging for the second production to be picked up and shipped in two batches: one directly to Pariva's location in Dorchester, Massachusetts, and the other to Seacrest, in Lynn, Massachusetts. ECF 12-6, at 5-22 (emails, bills of lading, and packing slips). The production was picked up from Freedom Foods on June 13. *See id.* at 5.

At some point in the summer of 2024, a customer notified Pariva that mold was present in a recently purchased jar of Pariva Bites. ECF 12-1, ¶ 25. Pariva then inspected the portion of the second production it had received from Freedom Foods and found that "a majority of the jars had mold in them." *Id.* Pariva alerted Seacrest, its distributor, about the mold issue. *Id.* On July 15, 2024, Pariva initiated a voluntary recall with the Food and Drug Administration, which directed Pariva to destroy all Pariva Bites produced at Freedom Foods. *Id.* ¶ 26. After alerting Freedom Foods to the voluntary recall, Pariva requested the return of its machinery, but Freedom Foods initially refused. *Id.* ¶¶ 27-28. When Pariva did finally get its equipment back, its machinery was "returned uncleaned," with mold, and "either broken or missing pieces." *Id.* ¶ 28.

Pariva filed this lawsuit in April 2025 in Suffolk Superior Court, asserting six claims against Freedom Foods: breach of its contract to produce Pariva Bites (Count I); breach of the equipment contract (Count II); breach of the implied warranty of merchantability (Count III); breach of the implied warranty of fitness for a particular purpose (Count IV); quantum meruit (Count V); and a violation of M.G.L. c. 93A (Count VI). ECF 1-1, ¶¶ 25-54. Invoking diversity jurisdiction, Freedom Foods removed this case to this Court in April 2025. ECF 1. Freedom Foods then moved to dismiss Pariva's complaint for lack of personal jurisdiction or improper venue under

Federal Rules of Civil Procedure 12(b)(2) and (3), respectively. ECF 8. In the alternative, Freedom Foods moved to transfer this action to the United States District Court for the District of Vermont pursuant to 28 U.S.C. § 1404(a). *Id.* Pariva opposed those motions and moved, in the alternative, for limited discovery as to personal jurisdiction. ECF 12. After Freedom Foods filed its reply, the Court held a hearing and took the motions under advisement. ECF 15, 21.

## DISCUSSION

### I.     Personal Jurisdiction.

Freedom Foods first moves to dismiss Pariva's complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). In considering such a motion, a court may use one of three methods to assess whether the plaintiff has met its burden to establish personal jurisdiction: the prima facie method, the preponderance method, or the likelihood method. See *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 & n.5 (1st Cir. 2016). The prima facie method is the method "most commonly employed in the early stages of litigation," and neither party disputes its application here. *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83-84 (1st Cir. 1997). Under the prima facie approach, the Court must ask whether the plaintiff has proffered "evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." *Baskin-Robbins*, 825 F.3d at 34. It is not sufficient for a plaintiff to "'rely on unsupported allegations in [its] pleadings.'" *A Corp.*, 812 F.3d at 58 (quoting *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 134 (1st Cir. 2006)). The plaintiff must "go beyond the pleadings and make affirmative proof." *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 94 (1st Cir. 2024) (quotation marks omitted).

In a diversity case like this one, Pariva must show that the Court's exercise of jurisdiction over Freedom Foods meets the requirements of the Commonwealth's long-arm statute, M.G.L. c. 223A, § 3, and the constitutional minimum demanded by due process. *See Rosenthal*, 101 F.4th

at 94-95. Here, the Court will "bypass the statutory phase of the jurisdictional inquiry" because, as will be explained, Pariva's evidence in support of personal jurisdiction over Freedom Foods does not "pass constitutional muster." *Sawtelle v. Farrell*, 70 F.3d 1381, 1388 (1st Cir. 1995).

"Due process dictates that a court may only assert its power over an out-of-forum defendant if the party has 'such contacts with the forum [State] that the maintenance of the suit is reasonable, in the context of our federal system of government, and does not offend traditional notions of fair play and substantial justice.'" *Sec. & Exch. Comm'n v. Gastauer*, 93 F.4th 1, 8 (1st Cir. 2024) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)). The due process inquiry "has long focused on the nature and extent of 'the defendant's relationship to the forum State.'" *Ford Motor Co.*, 592 U.S. at 358 (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of California, S.F. Cnty.*, 582 U.S. 255, 262 (2017)). Pariva contends that this Court has specific, not general, jurisdiction over Freedom Foods. ECF 12, at 5; *see Ford Motor Co.*, 593 U.S. at 358-60 (distinguishing general and specific jurisdiction). In a specific jurisdiction case, the exercise of jurisdiction over the defendant satisfies due process if the plaintiff can "show that (1) its claim directly arises out of or relates to the defendant's forum activities; (2) the defendant's forum contacts represent a purposeful availment of the privilege of conducting activities in that forum, thus invoking the benefits and protections of the forum's laws and rendering the defendant's involuntary presence in the forum's courts foreseeable; and (3) the exercise of jurisdiction is reasonable." *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 7 (1st Cir. 2018). "This test is flexible and fact-specific, written more in shades of grey than in black and white." *Rosenthal*, 101 F.4th at 95 (quotation marks omitted).

The first five counts of Pariva's complaint assert contract and contract-related claims against Freedom Foods. For such claims, determining whether the claim arises out of or relates to

8

the defendant's forum activities turns on "whether the defendant's activity in the forum state was instrumental either in the formation of the contract or its breach." *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 258-59 (1st Cir. 2022) (quotation marks omitted). As to formation, "[n]othing could be more instrumental . . . than the literal act of forming the contract itself." *Adelson*, 510 F.3d at 49 (quotation marks omitted). The Court therefore looks primarily to whether the contract was formalized and entered into in Massachusetts. *See Vapotherm*, 38 F.4th at 259. Relevant, too, is whether "the contract itself subjected the [defendant] to 'substantial control and ongoing connection to [Massachusetts] in the performance of [the] contract.'" *Id.* at 260 (quoting *Adelson*, 510 F.3d at 49).

Pariva's theory of its first breach of contract claim is that the parties formed a production contract via emails exchanged between March 2024, when the parties discussed Freedom Foods' SQF certification and Pariva's Whole Foods production, and late May 2024, when the parties discussed the cost for the two-day production run. *See* ECF 12-3, at 3; ECF 12-7, at 2. This contract, in Pariva's view, reflected an agreement between the parties whereby Pariva would pay Freedom Foods to produce Pariva Bites at its Vermont facility and then help "arrange for shipment [of] both productions to Pariva's distributor and to Pariva." ECF 12-1, at 30-31. Freedom Foods disputes that any such contract was formed. But the Court need not resolve this dispute, because even if such a contract was formed, Pariva has provided no evidence that any steps involved in its formation occurred in Massachusetts, rather than Vermont. *See Vapotherm*, 38 F.4th at 259; *Adams v. Adams*, 601 F.3d 1, 6 (1st Cir. 2010) (relatedness not established where "the specific terms of [the] contract were [not] formalized and entered into in the forum state," but rather were discussed over the phone (quotation marks omitted)); *Adelson*, 510 F.3d at 49-50 (relatedness established

9

where the plaintiff provided evidence that the contract was formalized and entered into during the defendant's in-person trip to Massachusetts).

Pariva fares no better in demonstrating that the alleged production contract subjected Freedom Foods to substantial control and ongoing connection to Massachusetts in the performance of the contract. *See Vapotherm*, 38 F.4th at 259. As a party to that contract, Pariva stood to benefit from that agreement in Massachusetts, including through Freedom Foods' efforts to help arrange shipment of the Pariva Bites to Massachusetts. But these facts do not suggest an ongoing connection between Freedom Foods and Massachusetts, because the vast majority of Freedom Foods' obligations under the alleged contract—namely, the manufacturing and packaging of Pariva Bites at its facility—occurred in Vermont. Freedom Foods' limited contacts with Massachusetts are insufficient to conclude that it was subject to substantial control in this forum. *Compare Vapotherm*, 38 F.4th at 259 (relatedness not established where the defendant's performance occurred outside the forum and his contacts with the forum were "limited and infrequent"), *with C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 64-66 (1st Cir. 2014) (relatedness established where "performance under the contract" occurred in Massachusetts), *and Cossart v. United Excel Corp.*, 804 F.3d 13, 20 (1st Cir. 2015) (similar).

Similarly, Pariva has not established that the April 2024 equipment contract, at issue in Count II of the complaint, was formed in Massachusetts or subjected Freedom Foods to substantial control or ongoing connection to Massachusetts. The record does not specify where this contract was executed, and Pariva provides no evidence that Freedom Foods' equipment usage was substantially controlled in Massachusetts. *See Vapotherm*, 38 F.4th at 259. Rather, the terms of the equipment contract govern Freedom Foods' use and maintenance of Pariva's equipment at its facility in Vermont. *See* ECF 9-7; ECF 12-1, ¶¶ 8, 15. Although the equipment contract required

10

Freedom Foods to deliver the machinery "back to [Pariva] upon demand and without delay," this singular, potential contact with Massachusetts does not warrant the exercise of specific jurisdiction. ECF 9-7, § 1; *see Vapotherm*, 38 F.4th at 260 (defendant's "limited and infrequent" contacts with forum regarding administrative matters does not amount to being "subject to substantial control there").

Nor has Pariva provided evidence that Freedom Foods' contacts with Massachusetts were instrumental to the alleged breach of the production or equipment contracts. Pariva alleges that Freedom Foods breached the production contract by "fail[ing] to adhere to Pariva's specifications" and "us[ing] cost-saving measures" that caused the Pariva Bites produced by Freedom Foods to be "contaminated with mold." ECF 1-1, ¶¶ 28-29. Each of these alleged acts or failures references Freedom Foods' activities in Vermont, where production occurred. As to the equipment contract, Pariva alleges a breach based on Freedom Foods' "refus[al] to return the equipment upon explicit request," failure to "properly operate the equipment," and restriction of "Pariva's access to [Freedom Foods'] premises." ECF 1-1, ¶ 34. Here, too, all the alleged failings by Freedom Foods stemmed from choices made or actions taken in Vermont, not Massachusetts. Beyond the fact that it experienced alleged contractual damages in Massachusetts, Pariva has proffered no evidence linking Freedom Foods' alleged breach of either contract to Massachusetts. *See Vapotherm*, 38 F.4th at 259. Without such evidence, Freedom Foods' Massachusetts-based activities cannot be deemed "instrumental" to the breach of either contract. *Id.*

Counts III, IV, and V of the complaint assert additional contract-related claims. Counts III and IV, respectively, allege that Freedom Foods breached the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. Where, as here, a plaintiff's breach of warranty claim seeks purely economic recovery, that claim sounds in contract. *See Commonwealth*

11

*v. Johnson Insulation*, 425 Mass. 650, 653 (1997); *Heath v. Palmer*, 181 Vt. 545, 550 (2006). Count V asserts a claim for quantum meruit, a quasi-contract theory of recovery. *See Salamon v. Terra*, 394 Mass. 857, 859 (1985); *Masiello Real Est., Inc. v. Matteo*, 215 Vt. 607, 618-19 (2021). Though quantum meruit claims are independent of contract claims, they are likewise considered contractual in nature. *See Bushkin Assocs., Inc. v. Raytheon Co.*, 906 F.2d 11, 15-16 (1st Cir. 1990) (quantum meruit claims typically "arise in a contractual context" and are considered contract related in Massachusetts courts); *In re Est. of Elliott*, 149 Vt. 248, 253 n.2 (1988) (the doctrine of unjust enrichment "has been partially incorporated into the law of contracts"); *DJ Painting, Inc. v. Baraw Enters., Inc.*, 172 Vt. 239, 242 & n.2 (2001) (explaining that the distinction between unjust enrichment and quantum meruit "lies not in the alleged wrong committed by the defendant but rather in the measure of recovery for that wrong"). Because the allegations supporting Pariva's breach of implied warranty and quantum meruit claims are derivative of those set forth in its breach of contract claims, Counts III through V fail to establish relatedness for the same reasons.

Pariva asserts in Count VI that Freedom Foods violated M.G.L. c. 93A through its "unfair or deceptive acts or practices," as set forth "in detail" in Counts I through V. ECF 1-1, ¶¶ 50-54. Because Pariva makes no Chapter 93A allegations distinct from those set forth in its contract claims, the same jurisdictional analysis applies. *See Slade Gorton & Co. v. HSBC Bank Canada*, No. 13-cv-12290-DJC, 2014 WL 4772264, at *10 (D. Mass. Sep. 23, 2014) (applying the same personal jurisdiction analysis to the plaintiff's contracts claims and Chapter 93A claims where the bases were "identical"). For the same reasons the Court lacks personal jurisdiction over Pariva's contract claims against Freedom Foods, the Court cannot exercise specific personal jurisdiction over Pariva's Chapter 93A claim.

At bottom, because Pariva has failed to demonstrate that Freedom Foods' Massachusetts contacts were instrumental to the formation or breach of the production or equipment contracts, relatedness has not been met for any of its claims. On that basis alone, the Court lacks personal jurisdiction over Freedom Foods, so it need not separately consider whether Pariva has established the purposeful availment and reasonableness elements of the specific jurisdiction test or whether Pariva satisfies the Commonwealth's long-arm statute.

## II. Pariva's Request for Jurisdictional Discovery.

In opposing Freedom Foods' motion to dismiss, Pariva sought jurisdictional discovery in the event the Court concluded that it had not adequately demonstrated personal jurisdiction over Freedom Foods. ECF 12, at 17. While a "timely and properly supported request for jurisdictional discovery merits solicitous attention," *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625 (1st Cir. 2001) (quotation marks omitted), district courts retain "'broad discretion' to determine whether jurisdictional discovery is warranted," *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 128 (1st Cir. 2022) (quoting *Swiss Am. Bank*, 274 F.3d at 626). A plaintiff, like Pariva, seeking such discovery must make "a colorable claim for personal jurisdiction." *Swiss Am. Bank*, 274 F.3d at 625-26. "The threshold is low: a party must identify a non-frivolous dispute about facts that may yield a sufficient predicate for in personam jurisdiction." *Motus*, 23 F.4th at 128.

Pariva has failed to clear this threshold. The discovery Pariva seeks—information regarding Freedom Foods' transactions with *other* Massachusetts businesses and contacts with Massachusetts arising from *those* transactions, *see* ECF 12, at 18—cannot "yield a sufficient predicate for in personam jurisdiction" because it has no conceivable bearing on relatedness, *Motus*, 23 F.4th at 128. To be sure, the discovery Pariva requests could unearth facts indicating that Freedom Foods has purposefully availed itself of the privilege of conducting activities in

Massachusetts. But where, as here, a plaintiff fails to satisfy the threshold requirement that its claims arise out of or relate to the defendant's in-forum activities, allowing jurisdictional discovery on a different element of the specific jurisdiction inquiry "promise[s] to be an exercise in futility." *Motus*, 23 F.4th at 128. Pariva's request is, accordingly, denied.

## CONCLUSION AND ORDER

For the foregoing reasons, Freedom Foods' motion to dismiss, ECF 8, is GRANTED, and Pariva's cross-motion for jurisdictional discovery, ECF 12, is DENIED. This action is DISMISSED without prejudice.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: December 4, 2025